R.A. FITZWILLIAM, et al., Appellant,

v.

**WESLEY UNITED METHODIST CHURCH, Respondent.**

No. WD 48511.

Missouri Court of Appeals, Western District.

Aug. 30, 1994.

James Buckley, Sedalia, for appellant.

Stanley Brian Cox, Sedalia, for respondent.

Before ULRICH, P.J., and LOWENSTEIN and HANNA, JJ.

HANNA, Presiding Judge.

The plaintiffs are residents of Bloess & Routszong's First Subdivision to Stewart and Thompson's Second Addition to the City of Sedalia, Missouri.   On October 22, 1991, the

defendant, Wesley United Methodist Church (Church), acquired Lots Eight and Nine of Block Two of that subdivision, "subject to easements apparent or of record and restrictions, if any." The Church intends to remove the existing home from the lots and construct a surface parking facility, providing approximately fourteen to eighteen parking spaces for congregation members. The plaintiffs filed an action seeking a declaratory judgment that the Church's proposed use of the residential real estate as a parking lot violates both a restrictive covenant and zoning ordinances of the city. Plaintiffs also sought an injunction preventing the Church from constructing the lot.

The church building and a previously established parking area are located immediately to the south of the subdivision, and were in existence on October 26, 1955, when the restrictive covenants were recorded. The church building itself is located immediately to the south of Lots Eight and Nine, separated by an alley twenty feet in width, which is owned and maintained by the city of Sedalia. A surface water drainage ditch, approximately eight feet deep, is located on the western half of the alley making the alley impassable to vehicular traffic.

The trial court found that the use of Lots Eight and Nine as a church parking lot did not violate the restrictive covenant or the city zoning ordinance. The court also found that, because of certain structures located on other lots in the subdivision, the plaintiffs were estopped from enforcing the covenant, and that the primary purpose of the covenant was to preserve the residential character of the neighborhood and to prevent commercial use of the real estate. Balancing the equities, the court found that the Church's proposed use of the real estate would cause little, if any, harm to the plaintiffs, and that the Church would suffer great hardship if not allowed to use the lots for parking. Therefore, the court allowed the Church to construct a parking lot on Lots Eight and Nine, but ordered the Church to close the way of access that exits the lot directly onto Maple Lane in order to minimize harm to the plaintiffs.

The plaintiffs appeal the court's judgment, arguing that the court erred in determining that the proposed parking lot did not violate the restrictive covenant or the municipal zoning ordinance. Also, the plaintiffs contend that the trial court erred in finding that the plaintiffs were estopped from enforcing the restrictive covenant because of multiple violations of the covenant existing throughout the neighborhood. However, our holding on the first two points render this issue moot.

■ In their first point, the plaintiffs argue that the Church's use of Lots Eight and Nine as a parking lot is not residential in character and, therefore, violates the restrictive covenant. The covenant states in relevant part:

2. No lot shall be used except for residential purposes. No building shall be erected, altered, placed, or permitted to remain on any lot other than one detached single-family dwelling not to exceed two and one-half stories in height and a private garage for not more than two cars.

■ Restrictive covenants are not favorites of the law, and any doubt is resolved in favor of the free use of land. *Blevins v. Barry–Lawrence County Ass'n For Retarded Citizens*, 707 S.W.2d 407, 408 (Mo. banc 1986). In interpreting the meaning of a restrictive covenant, the court must look at the plain and obvious purposes of the restriction and give all terms their ordinary and usual meaning in the connection in which they are used. *Fox v. Smidt*, 869 S.W.2d 904, 905 (Mo.App.1994). The primary purpose is to ascertain the intention of the parties as to the purpose which they sought to accomplish by the covenants, taking into account the circumstances existing at the time the covenants were drafted. *Blackburn v. Richardson*, 849 S.W.2d 281, 286–87 (Mo.App.1993).

The Missouri Supreme Court has held that a structure which is used for residential purposes is "one in which people reside or dwell, or in which they make their homes, *as distinguished from one* which *is used for commercial or business purposes*." *Shepherd v. State*, 427 S.W.2d 382, 388 (Mo.1968) (emphasis added). That definition was again used by the Supreme Court in *Blevins*, 707 S.W.2d at 408.

The drafter's intent in using the phrase "residential purposes" was clearly to preserve the overall residential character of the subdivision by prohibiting commercial activities and structures. Therefore, the question which must be addressed is whether the construction of a church parking lot would defeat the intentions of the drafters. We hold that it does not.

A church is certainly not a commercial or business enterprise. Financial gain is not the motive of the organization. *See Id.* at 409. Further, the drafters were aware that since at least 1930, churches and church parking lots had been permitted to exist in residential neighborhoods pursuant to the Sedalia municipal ordinances regarding zoning. The church building and a parking lot existed immediately next to the subdivision at the time the covenants were drafted. The extension of the church parking lot into the subdivision was not unforeseeable in 1955, yet the drafters did not specifically prohibit the construction of a parking lot. For these reasons, we hold that the construction by the Church of a parking lot on Lots Eight and Nine of the subdivision does not violate the restrictive covenant allowing use of the land for residential purposes only. Point denied.

■ In their second point, the plaintiffs argue that the trial court erred in finding that the Church's proposed use of Lots Eight and Nine as a parking lot did not violate the city zoning ordinances. Section 31–7(a)(2) of the Sedalia city ordinances allows the existence of a church building in a single family residential district. Further, § 31–7(a)(11) permits "[a]ccessory uses, including automobile parking area, customarily incident to the above uses and located on the same lot therewith, not involving the conduct of a business or industry." The plaintiffs claim that the proposed use of the lots for parking is not an "accessory use" because Lots Eight and Nine are not on the "same lot" as the church building, since they are separated by a city-owned alley and drainage ditch.

The city zoning ordinances define "lot" in § 31–2 as:

A parcel of land occupied or to be occupied by one building, or unit group of buildings, and the accessory buildings or uses customarily incident thereto, including such open spaces as are required under this chapter and having its principal frontage upon a public street.

The trial court found that the Church's acquisition of Lots Eight and Nine, immediate and proximate to the church building, created one lot, despite the fact that they are separated by an alley and drainage ditch.

The plaintiffs rely on *Ex parte Fairhope Bd. of Adjustment and Appeals,* 567 So.2d 1353 (Ala.1990), to support their position that the proposed parking lot is not on the same lot as the church building and, therefore, is not an accessory use within the meaning of the zoning ordinances. The *Fairhope* court, interpreting a similar ordinance, held that a church building located across the street from the proposed parking area was not on the same lot. *Id.* at 1355–56. In this case, the church building and Lots Eight and Nine are not separated by a street or by another lot, but rather are separated by an alley and drainage ditch owned and maintained by the city of Sedalia. It is the clear intention of the ordinance to permit parking areas which are contiguous to the primary use, here, the church building. We hold that the church building and the newly acquired Lots Eight and Nine are now one lot despite the presence of the alley and drainage ditch. Therefore, the trial court properly held that the proposed parking lot was an accessory use and did not violate the Sedalia zoning ordinances.

Judgment affirmed.

All Concur.